UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN FRANCISCO VEGA,

    Plaintiff,

v.                              Case No: 2:18-cv-723-FtM-29NPM

DONALD SAWYER, Florida Civil
Commitment Center
Administrator,

    Defendant.
_____/

**OPINION AND ORDER**

Before the Court are Defendant Donald Sawyer's Motion for Summary Judgment (Doc. #68) and Plaintiff Juan Francisco Vega's Motion for Summary Judgment (Doc. #69).

**Background**

Vega is a detainee at the Florida Civil Commitment Center (FCCC) because a Florida court deemed him a sexually violent predator under the Jimmy Ryce Act, Fla. Stat. § 394.910 et seq. Sawyer is the FCCC's Facility Administrator. Vega filed this civil rights action against Sawyer under 42 U.S.C. § 1983, alleging that Sawyer violated his right to marriage. Both parties now move for summary judgment.

In February 2017, Vega and Nancy Martinez—a former FCCC employee—sought a marriage license from Robert Germaine, the

former Clerk of the Courts in Highlands County, Florida.[1] The Clerk has a policy for "Incarcerated Marriages." It requires an incarcerated applicant to "present a statement from facility with the inmate's name authorizing marriage request on prison letterhead." (Doc. #67-2). Vega asked Sawyer to approve his marriage, and Sawyer refused. (Doc. #69-1 at 2). On March 9, 2017, Antonia Rivera, Director of Official Records for the Highlands County Clerk of the Courts, sent Martinez a letter stating, "This is to advise you that we are not able to assist you with your request. Please contact the Clerk's office in your county for assistance." (Doc. #67-5).[2]

On April 3, 2017, Vega petitioned the Florida Second District Court of Appeal (2nd DCA) for a writ of mandamus against Germaine.[3] The 2nd DCA denied the petition because Vega failed to meet the mandamus standard. (Doc. #67-6). Vega asked the Florida Supreme Court and the United States Supreme Court to review the 2nd DCA's decision, but both courts declined. (Doc. #67-7; #67-8).

---

[1] Germaine has since been replaced by Jerome Kaszubowski.

[2] The letter was mailed to Martinez at a P.O. box in Fort Myers, Lee County, Florida. The record is silent as to why Vega and Martinez sought a marriage license in Highlands County and whether they have attempted to get a license from a clerk in a different county.

[3] The Court takes judicial notice of the facts stated on the 2nd DCA's electronic docket for Case Number 2D17-1312. <u>See</u> Fed. R. Evid. 201.

On August 18, 2017, Robin Dodd, Supervisor of Tax Deeds & Marriage License for the Highland County Clerk of Courts emailed the following to Lavon Cardenas, Legal Coordinator at FCCC: "We have received a marriage license request from Juan Vega to marry Nancy Martinez. Could you please provide our office with your response to this request as soon as possible." (Doc. #67-3). Sawyer responded, "FCCC does not support marriages at our facility." (Doc. #67-4). The Highlands County Clerk did not issue Vega and Martinez a marriage license.

Sawyer's Affidavit sheds light on the FCCC's policy regarding resident marriages:

> 10. If a resident wishes to marry, we have strict guidelines for how the marriage ceremony is to take place, solely for the purpose of ensuring the health, safety, and welfare of residents and staff.
>
> 11. My staff and I do not otherwise get involved with a resident's decision to marry.
>
> 12. FCCC administration does not grant or deny permission for a resident to marry.

(Doc. #67-1 at 3). Sawyer further explained the policy in response to an interrogatory:

> FCCC does not prohibit a resident's decision to get married. FCCC does not take a position approving or denying a resident's marriage decision. FCCC does not assist or facilitate a resident's marriage process. The resident is able to make his own arrangements, which do not require approval or denial from FCCC administration.

(Doc. #69-3 at 4).

3

Vega's Affidavit claims, "The FCCC approved marriage applications, before and after my marriage request, for at least four FCCC detainees." (Doc. #69-1 at 2-3). Vega does not state how he came to this knowledge. But in his Complaint, he explains that while litigating in state court, he and Martinez "discovered that other Counties in Florida have previously sold marriage licenses to civil detainees and their Fiancée's [sic] and that the [FCCC] has previously approved the marriage of other residents." (Doc. #1 at 4-5). On this point, Vega's Affidavit is not proper summary judgment evidence because it is not based on personal knowledge. See Fed. R. Civ. P. 56(c)(4). Thus, Sawyer's description of the FCCC's policy of neutrality in residents' marriage decisions and Sawyer's strict adherence to that policy are uncontroverted.

## Legal Standard

Summary judgment is appropriate only when the Court is satisfied "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. See Battle v. Bd. of Regents, 468 F.3d 755, 759 (11th Cir. 2006).

**Analysis**

To maintain a claim under 42 U.S.C. § 1983, Vega must prove: "(1) a violation of a constitutional right; and (2) that the alleged violation was committed by a person acting under the color of state law." Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016). There is no doubt that marriage is a fundamental right under the Due Process Clause of the Constitution. Obergefell v. Hodges, 576 U.S. 644, 664 (2015). The parties here disagree whether Sawyer deprived Vega of that right.

Vega argues the Court should apply the Turner test to Sawyer's refusal to approve Vega's marriage. In Turner v. Safley, the Supreme Court announced a four-factor test to determine the validity of a regulation that impinges on a prisoner's constitutional rights. 482 U.S. 78, 89-92 (1987). The Eleventh

5

Circuit adopted a more lenient version of the Turner test for FCCC detainees. Pesci v. Budz, 730 F.3d 1291, 1297-98 (11th Cir. 2013).

Sawyer argues the Turner test is inappropriate here because he did not interfere with Vega's right to marriage. Rather, the Highlands County Clerk of the Courts created an artificial and unlawful impediment to marriage by requiring Sawyer's approval. Sawyer further argues that even if the Clerk's "Incarcerated Marriages" policy is legally sound, it does not apply to Vega because he is civilly detained, not incarcerated.

To resolve this dispute, the Court turns to the Florida Statutes. Section 741.01(1) states, "Every marriage license shall be issued by a county court judge or clerk of the circuit court under his or her hand and seal. The county court judge or clerk of the circuit court shall issue such license, upon application for the license, if there appears to be no impediment to the marriage." Florida statutes do not define "impediment," but possible examples can be found at Sections 741.04(1) (setting a minimum age), 741.04(4) (requiring completion of a premarital preparation course), 741.21 (prohibiting incestuous marriages), and 741.212 (prohibiting same-sex marriages) (declared unconstitutional by Brenner v. Scott, No. 4:14-CV-107-RH/CAS, 2016 WL 3561754 (N.D. Fla. Mar. 30, 2016)).

Nothing in the Florida Statutes suggests that Vega's involuntary civil commitment is an impediment to marriage. Nor

6

do the statutes suggest that issuance of a marriage license can hinge on Sawyer's approval or disapproval. Vega has been unable to marry Martinez because Germaine refused to issue him a marriage license. The law does not afford Sawyer any control over that decision.

Germaine argued to the Supreme Court that non-issuance of a marriage license was proper under his "Incarcerated Marriages" policy because Sawyer did not approve the marriage. (Doc. #1 at 7-8). This argument fails for a host of reasons. First, Germaine's office informed Martinez of the denial in March 2017, months before seeking input from the FCCC. Second, detainment at the FCCC is not an impediment to marriage. The uncontroverted record shows that multiple FCCC residents have gotten married without Sawyer's approval. Third, Florida law required Germaine—not Sawyer—to decide whether to issue a marriage license. Fourth, even if Germaine could ask Sawyer to decide whether there as an impediment to the marriage, he did not do so; his office merely asked the FCCC to provide "a response" to Vega's request for a marriage license. Fifth, Sawyer's response—that the FCCC does not support marriages—is not a legal impediment to marriage. Under Florida law, Sawyer's approval of Vega's marriage has no bearing on Vega's right to a marriage license.

In short, Vega's § 1983 claim against Sawyer fails because Sawyer has not violated Vega's right to marriage. The Highlands

County Clerk—not Sawyer—refused to issue Vega a marriage license. Sawyer is thus entitled to summary judgment.

Accordingly, it is

**ORDERED**:

(1) Defendant Donald Sawyer's Motion for Summary Judgment (Doc. #68) is **GRANTED**.

(2) Plaintiff Juan Francisco Vega's Motion for Summary Judgment (Doc. #69) is **DENIED**.

(3) Vega's Complaint (Doc. #1) is **DISMISSED with prejudice**.

(4) The Clerk is **DIRECTED** to enter judgment, terminate all deadlines and hearings, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on May 4th, 2021.

*/s/ John E. Steele*
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record